That brings us to our fifth and final argument of the morning in Appeal No. 23-1678, Antosh and Lashley v. Village of Mount Pleasant. Mr. Olsen. Yep, good morning. Good morning, Your Honors. May it please the Court, my name is, oh, I'm sorry, was I supposed to wait? Yeah, you can go right ahead. Oh, I can go ahead. My name is Eric Olsen and I represent the appellants in this matter. This matter stems from an eminent domain-styled taking which was initially appeared to be for road purposes, but then as part of the state litigation unfolded, it became apparent that, in fact, the taking was for the Foxconn project. Mr. Olsen, can I? I mean, maybe it's the same question. As I read through this rather voluminous file, I kept having trouble seeing road purposes and the Foxconn project as two completely different things. The reason they were interested in improving that particular section of road may well have been inspired by not just the hope for the Foxconn project, but the hope for the entire tax increment district development. They were seeing this as something. And they indeed did change the roads. So I don't know where under Wisconsin eminent domain the motivation for a road project makes any difference. Roads are public goods. These were available to the public. They're there now. Wisconsin has better roads in this area. So explain to me why this dichotomy that you see is there. Imagine, for example, if a corrupt mayor of a city caused a 40-acre parcel to be condemned for his son so that his son could build a warehouse on it. But we don't have that. We have a Josh Lashley parcel. And the road intersection is indeed improved. Now, if it's a corrupt mayor who wants a really nice road there, actually, I can think of historical examples of people having bridges built or exits on highways or all kinds of places where politically influential people affect the timing and scope of projects. But it's a public good in the end. It's just a better road now. If we look at what Justice Kennedy said in the Kelo case, which is cited on page 17. Yeah, we're familiar with Kelo, which, by the way, does uphold this sort of public development use of the eminent domain power. True, Your Honor. But it upholds it without a blank check. On 17 of our brief, if I may Kennedy explained that while a rational basis standard of review applied transfers intended to confer benefits on particular favored private entities with only incidental or pretextual public benefits are barred under the Fifth Amendment. And I Mr. Olson, can I try? I'm going to ask you what I think is the same question. Yes, sir. Okay. It goes to this dichotomy. The thing that throws me off about your brief, and why don't you tell me it doesn't, that's what I'm interested in, is you say, well, we had not a clue. We had no idea that this road project had anything to do with Foxconn. And what I say to myself is, how can that possibly be the case factually? Because of the notice that your clients received, the development of the road, it seems to me, is part of the broader Foxconn development project. And they were told that from the beginning in the appraisal that was provided, in the appraisal correspondence that was provided. So am I reacting the wrong way to your brief, which seems like what you were trying to express was my clients were with Foxconn. That's true, Your Honor, though it may be in Wisconsin, we have a framework for eminent domain law where people who are facing eminent domain are entitled to bring two different types of lawsuits. Right. No, I don't think you're answering Judge Scudder's question. I'm asking you as a fact, more as a factual matter. There's a June 3, 2019 letter that says, written to them, that says these roadways are being improved to allow for the construction of an industrial development that is commonly known as the Foxconn development. And that's not the last time Foxconn is mentioned. And so when the condemnation happens, when the village records this award of damages, which I gather is kind of the pivotal moment, they choose not to, actually earlier, they choose not to bring the right to take sort of action, which I see under the structure of Wisconsin law as a waiver on their part of whatever arguments you might have made. And they agree that they're just going to follow the other sort of action, the amount of compensation action. And so now to try to revive the first one in federal court seems to me that it's just too late. They waived their right to do that. No, I don't. Well, first of all, let me explain one thing. When we go to the map of the taping, which we see on page... They're here and there. You know where this map is. And so when we look at what was taken, the condemning authority took only the area within the blue lines. If they had also taken the chunk laying to the northwest, we would have immediately filed a right to take action, just like we did in all the cases that were lumped in with the Jensen case, which came before this court. Because the condemning authority did not take that chunk, we thought, okay, this is not something where we are going to be able to win a right to take action because they served a jurisdictional offer under 32.05 sub 5. They recorded an award of damages under 32.05 sub 5. And they carefully confined their taking only to the area within the blue lines. Right. So they just take what they need for the road. If you wanted to do other things with the rest of that land, that was up to you. So what's troubling to me is what you're doing, it's helpful. You're describing the litigation decisions that you made, right, and why you made them. But I am still stuck at the very beginning of how could your clients have reasonably thought it has nothing to do with Foxconn, given the court... I don't know why they have no idea. Maybe you know. But to think that the taking has nothing to do with Foxconn is what I keep stumbling on. And let me just add to that fact, if I could please, what the district court relied on, that the map for the rezoning that you relied on in the other case that shows your client's property in there specifically says Foxconn properties map. Right. And it included the chunk to the northwest. So let me try to make an argument. If at the time that that jurisdictional offer had come in, we had filed two lawsuits, a right to take lawsuit and a compensation lawsuit, we would have been perfectly fine doing that. That's what we did in the other case. And those two cases would have continued on through the court system. So the only question becomes, is it too late to file this one, this right to take style lawsuit at this point in time? Well, under Wisconsin law, it seems pretty clear it is. It would be too late to file it under 32.05 sub 5. It may very well not have been too late to a motion to dismiss. But when they troubled the district court was you were, I think, correct me if I'm wrong, a couple of weeks, no, a couple of days away from trial. Right. When the federal action. Yeah. Yeah. Yeah. A couple, not, not weeks, a couple of days. There was an adverse ruling in the state litigation about the project influence rule about the project influence rule. Right. And you see the adverse one. And then you come over into federal court. Right. So it, so the reason I'm observing that is it, when you combine two facts in my mind, the whole world knew about Foxconn number one, and definitely the people that live at an intersection near Foxconn. I can't imagine a world where they don't know what it is. And number two, on the brink of the trial, you come over to federal court. It looks like under that 10th Colorado river factor that it's very hard to call the district court's discretion, you know, and abuse under Colorado river. I believe that the cases are clearly not parallel because under the Wisconsin framework, you're always allowed to have a right to take and a compensation case that proceed independently of one another. There's a question whether it was time barred and how 1983 32.05 sub five and article one, section 13 of the Wisconsin constitution interact. I can, I will make this candid representation to the, in terms of time barring we offered to proceed with the trial with the other side, only waiving that by proceeding that they would not use our proceeding with the trial as a, as a waiver against us in the federal court case, that they would allow that to rise and fall on its own merits, whatever it may be, without saying that because we proceeded with the trial, we had waived something. They would not allow us to do that. So I believe that we did the best we could under the circumstances. And we were accused of some pretty serious gamesmanship. I guarantee you it was not that I thought at the beginning, we didn't have a chance of winning a right to take case because they styled it as a road taking. And they only took the area in the blue lines when they convinced the circuit court that it was part and parcel of the Foxconn project, which we argued against. We said, no, it's not part of the Foxconn project. And they argued for project influence purposes that it was, and then they ultimately convinced that district court that it was part and parcel of the Foxconn project. Then I believe judicial estoppel applies and we showed that flipping back and forth. So I think that there's an argument that it was not until we had the knowledge that the district, that the, that the state court would be convinced of that argument. That I think we, we understand that we're going to give you a little bit of time on rebuttal. Let's let's shift over and hear from the villages council. Yeah. Thank you very much. Hey, please. The court. My name is Chris Avalone. I represent the village of Mount Pleasant redevelopment authority and Mr. DeGroote. Your honors have it spot on. This case is about a road and it's always been about a road. When the village acquired the land in 2019, they stated it was for a road because that's what was ultimately built on that. And it's now a public road. It's not, there's no allegation here that only Foxconn is able to use this road or that some other private party receives the only benefit of this road. There's a, there is a public benefit here. So Mr. Avalone, maybe you can answer the question Mr. Olson was putting on the table. If the only thing that the present Wisconsin litigation is competent to address is the amount of compensation that these people are due for the land that was taken, I'll say for the road, then explain to me why that Wisconsin litigation is parallel to their effort to bring a broad based takings action under 1983 pursuant to federal constitutional law. Sure, your honor. This circuit does not require perfect symmetry for two cases to be parallel. Rather it requires there to be substantially the same parties, substantially the same issues, and a significant likelihood that a resolution to state course will be dispositive in the federal case. And all of those factors are present here. The plaintiffs are the same in both cases. The primary defendant, the village, is the same in both cases. And the additional defendants here, they don't have interests that diverge such that it would make the parties different. With regard to the issues, the basic facts and issues in both cases are the same. It's how the village acquired this property to build a road. And it is true that the state- And whether it was to build a road or whether it was for Foxconn's private use, I suppose, to- At least as I understand it, that's their argument. Yes, but in our view, that doesn't make a difference under Kelo. But I'll get to that later. But to respond directly to the parallel issues, it's our position that when the village acquired the road, the appellants could have filed a right to take action. If they would have filed that right to take action, that action takes precedence over all other matters then ongoing in the circuit court. And that serves the village's interest and finality in eminent domain procedures. And additionally, it's apparent that the relief they seek in the state court is exactly what they seek in this court. They want more money in the state court. They think they're entitled to five to eight times the amount they receive for their land per acre compared to what other individuals within the project area received. And if you look at their equal protection claim in this case, they're asking- essentially asking for the same relief. They want five to eight times- they want the project influence rule to not apply, and they want to receive a greater sum for their property. And Loughran and Freed also established that as this court reviews Colorado River cases, it can also consider what choices the appellant made in the state court litigation and how that affects- and that affects parallelism in this case, because they had their right to take under state law. And at the time, they also could have went directly to federal court because Nick was decided a few months prior to this taking. Yes, Nick was already on the books when when this happened, so they were not disadvantaged by Williamson at all. No, that's correct, Your Honor. And because these two issues are- because the two cases are parallel in our opinion, Judge Ludwig did not have used his discretion. He writes an 11-page opinion that marches through the various factors and- and just to briefly discuss a few of those factors, under Factor 1, this case involves property. And by operation of state law, fee title on this property has already transferred over to the- well, the village, and then it went on to the county because now it's a county road. But under Factor 3, they- the appellants have created piecemeal litigation by now filing this federal case less than a week before they were to try their just compensation case in state court. And also under Factor 4, the relative progress of each of the cases, the state court case had been- was way further ahead than the federal case. The federal case didn't make it past a motion to dismiss. Nor is this a situation where there is no state remedy for them. They had the right to file a right to take. And this is- this is true whether- because the village proceeded with the take under 3205, but also the subtext of Mr. Olson's argument is that, well, if the village would have proceeded under 3206, things would look differently. They wouldn't. They would have still had to file a right to take action in 40 days, and the project influence rule would still apply. The- the difference between those two being the one is for roads and sewers and the other is for everything else. Is that right? Yes, Your Honor. And last, as you- as the court already seized on, this- in our opinion, this litigation is vexatious and contrived. There is no reason that the appellants had to wait until a few days before trial to file their federal action. In fact, if they- if the court were to believe them that they were shocked that the road taking was associated with TID number five and the Foxconn development, then they would have filed their federal lawsuit in November of 2021 when the village filed the motion to eliminate seeking application of the project influence rule. Or they could have filed it in early January when the court agreed and applied the project influence rule. Instead, they waited until trial was less than a week later, and then they filed a federal action. So, for these reasons, we submit that these two cases are parallel under Colorado River. And if the court were- if the court disagrees and intends to review the case on the merits, we submit that the court should still affirm because the amended complaint does not state a claim for relief. As the court's aware, it asserts a variety of constitutional claims, and each of these fails. If we start with the private taking claim under the Fifth Amendment, the court can't ignore that the village acquired the land for a road, it built the land for a road, and the use of eminent domain to acquire land for a road has a legitimate public purpose. And even if this court says, no, we're going to look at this as the entire Foxconn project, then it's our opinion that this easily passes muster under Kelo. It followed- it was preceded by the legislative determination of both the state legislator with 2017 WIS 58, which authorized a TID for a high-tech development area, and also the village board, which was preceded also by numerous public hearings. And we just don't think- Can I just get a question about that? This legislative activity that the Wisconsin General Assembly undertook, as I understand it, affected about- close to 3,000, about 2,900 acres of property. And the project was going to be, what, $737 million? Is there any question that the Antosh and Lashley property is within the 2,900 acres? No, it falls right on the map that was provided to all landowners within the project. Yeah, okay. Returning to Kelo, we think that the project was intended to and did provide a significant public benefit via jobs, increased tax revenue, and other ancillary economic benefits. And just to briefly touch on the equal protection claim, to state an equal protection claim as a class of one, as the appellants attempt to do, they have to show that they received disparate treatment from similarly situated individuals. So is there any reason why, if we were to decide that Colorado River abstention is inappropriate here, why we should give the district court the first opportunity to look at these various additional theories that you're presenting? I mean, he didn't say a word about it because he thought it was Colorado River, and so that was I'm not saying you didn't preserve it, but we very often try to give the district court the first shot. Normally, I could see that being a reasonable option, Your Honor. But in this case, the complaint is relatively bare bones, and this court can affirm on any grounds. And the district court, in this case, is a dismissal. So the court may affirm the dismissal by looking at the allegations in the complaint, concluding as a matter of law that it does not state a claim for relief. Okay. So just to return to the equal protection claim, the similarly situated properties the appellants point to are larger. Many of them are larger. They're in different areas of the project. They were not taken for road purposes. They were taken and slated for actual development within the project by private entities. And many of those were complete takings compared to partial takings. And I don't think much needs to be said on the substantive due process claim other than this was not conscience shocking conduct. Thank you, Your Honors. We submit that the court should affirm. Thank you. Mr. Avalone, thanks to you. Mr. Olson, you have a little bit of time left. Let's round that up to a minute. Well, I'd like to thank all of you very much for your time and attention. This is a situation where if this case had been brought under 32.06, that would have put us on for Foxconn. If they had taken the entire property, it would have put us on notice that it was for Foxconn. They didn't do either of those things. And so as a result, our expectation was that there would be two separate takings, one for the road and one for Foxconn. It is in the area on the map, but it is at the very edge. And that left some question in our mind whether the roads were going to be characterized as part of Foxconn or not. And quite frankly, I thought on the record of how the jurisdictional offer came in under 32.05, how the plat came in, which shows only the road, and how the award of damages came in, that we would not have any chance of winning a private or public use argument or a right to take however you want it. Those are essentially synonymous. So we didn't file it. If any of those other factors had been true, this would have been part of the other litigation, which was Jensen versus Village of Mount Pleasant. And it would have gone up through that process long ago. I feel, quite frankly, that the way that the Village ran the taking on this left us in the dark as to what argument they intended to make later as far as the public use argument. I understand that they feel that I acted in a sharp manner. I didn't. I did my best. And I value my hard and seriously over the years. One last point I would leave this court with is that this did come in on a motion to dismiss. A motion to dismiss, at least under the Tamio versus Blagojevich case, is any possible inference. I'm not sure whether the actual law is any possible inference or any reasonable inference. Either way, I would say that our complaint has painted a possible or reasonable inference that the taking was for a private purpose when you read how Justice Kennedy characterized that in Kelo. And I would appreciate an opportunity, although I realize we have a steep hill to climb, I would appreciate an opportunity to try to prove that to the district court. I thank you all very much for your time. Mr. Olson, thanks to you. Mr. Avalone, thanks to you. We'll take the appeal under advisement. And that concludes the day's arguments. The court will be in recess.